IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 27, 2021

## STATE OF TENNESSEE v. COREY ANDERSON

**Appeal from the Circuit Court for Blount County**
**No. C-23345    Tammy Harrington, Judge**

_____

### No. E2020-01069-CCA-R3-CD

_____

The defendant, Corey Anderson, appeals the Blount County Circuit Court's order revoking his probation and ordering him to serve the balance of the two-year sentence imposed for his conviction of theft of property valued at $1,000 or more in confinement. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER, and J. ROSS DYER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal), and Mack Garner, District Public Defender (at hearing), for the appellant, Corey Anderson.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Mike Flynn, District Attorney General; and Tracy Jenkins, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On April 17, 2015, the defendant pleaded guilty to one count of theft of property valued at $1,000 or more, and the trial court sentenced him to two years of supervised probation to be served consecutively to a prior sentence. A probation violation warrant issued on October 25, 2019, alleging that the defendant violated the terms of his release by failing to report, failing to submit to a drug screen, and failing to pay fees, court costs, and restitution.

At the July 13, 2020 revocation hearing, Ashley Watson, the defendant's probation supervisor, testified that while on probation, the defendant would "do well for a little bit and then . . . it was not very good in March of 2018." She stated that the

defendant's original term of probation was revoked after an incident in which the defendant "had a little confrontation with" Ms. Watson in her office. She said that the defendant "was very vulgar, [used] severe profanity" and "had to actually get kicked out of the office that day." The defendant was ordered to serve his sentence in confinement upon that revocation and was granted determinate[1] release on November 1, 2018, at which time he returned to Ms. Watson's supervision.

Ms. Watson stated that, in mid-October 2019, the defendant "had a run-in with Maryville Police Department at the CVS near Foothills Drive, where they recovered a controlled substance and drug paraphernalia." Because of that incident, the defendant was ordered to report to the probation office for a drug screen on October 21 and October 23, but the defendant failed to do so. The violation warrant issued on October 25, 2019.

During cross-examination, Ms. Watson stated that the defendant reported consistently during the year of supervision prior to the October 2019 incident in Maryville, after which she had not seen the defendant. She acknowledged that the defendant was not charged in connection with that incident.

The defendant agreed with Ms. Watson's testimony. He testified that from November 2018 to October 2019, he was compliant with the terms of his release and was employed during that period. He acknowledged that he failed to report after his encounter with the Maryville police, explaining that he had checked himself into a rehabilitation program at Centerpointe in Knoxville "[b]ecause I was using drugs at the time," and he knew that he would test positive for drugs if he submitted to a test. He acknowledged that he had used morphine, which he had used for the "[b]etter part of five years," noting that he had relapsed approximately one month prior to the incident at the Maryville CVS.

The defendant stated that he was at Centerpointe for approximately two weeks. He said that he did not notify Ms. Watson that he had checked into Centerpointe because he "was afraid I was going to violate and just go straight to jail and they weren't going to let me get any further help that I might need." He stated that he left Centerpointe near the second week of November 2019, and "just started living my life," returning to work and "bettering myself." He stated that he had not used drugs since his treatment at Centerpointe and noted that he was in the process of "trying to get everything straight. I think I'm actually doing pretty well right now." He stated that he did not call Ms. Watson after he left Centerpointe "[b]ecause I just knew that I had to come to jail, and he acknowledged that "it was wrong of me to do that. I should have just came and got it over with."

---

[1] "Notwithstanding any other law, inmates with felony sentences of two (2) years or less shall have the remainder of their original sentence suspended upon reaching their release eligibility date." T.C.A. § 40-35-501(a)(3).

The defendant testified that, if granted release, he would "pick up where I left off. I'm going to get my job back." He was also in the process of filing for bankruptcy in order to "get all my past debt out," after which he would "pay off the court costs and restitution." He also said, "I'm going to start doing the right thing." He stated that he had a place to live and had an automobile to get to and from the probation office. The defendant explained that his prior altercation with Ms. Watson resulted from his having "admitted to her immediately that I was using drugs and she just kind of outright refused to help me that day."

During cross-examination, the defendant acknowledged that the remarks that he made to Ms. Watson during the prior altercation were "[m]ost likely" vulgar. He stated that his certificate of completion from Centerpointe was sent to the probation office by Helen Ross McNabb, where he was taking classes at the time. He acknowledged, however, that he was not in possession of the certificate. He also acknowledged that he checked into Centerpointe because he believed that a violation warrant had already issued.

At the end of the hearing, the trial court found that the defendant had violated the terms of his supervision and revoked his probation, ordering him to serve the balance of his sentence in confinement.

In this timely appeal, the defendant argues that the trial court abused its discretion by denying him any form of split confinement. The State contends that the trial court did not err.

The accepted appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). The 1989 Sentencing Act expresses a burden of proof for revocation cases: "If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence . . . ." T.C.A. § 40-35-311(e)(1).

Upon a finding by a preponderance of the evidence that the defendant has violated the conditions of probation, the trial court may revoke the defendant's probation and "[c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." *Id.*; *see also Stamps v. State*, 614

S.W.2d 71, 73 (Tenn. Crim. App. 1980). Following a revocation, "the trial judge may order the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension, and that it be executed accordingly." T.C.A. § 40-35-310(a). In other words, "[t]he trial judge retains the discretionary authority to order the defendant to serve the original sentence." *Reams*, 265 S.W.3d at 430 (citing *State v. Duke*, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995)).

Here, the defendant acknowledged that he violated the terms of his probation by failing to report. This acknowledgment supports the trial court's revocation of probation in this case. Furthermore, the law is well-settled that the trial court does not abuse its discretion by choosing incarceration from among the options available after finding that the defendant has violated the terms of his probation.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE